**EVERPURE, INC., Plaintiff–Appellant,**

v.

**CUNO, INC.,
Defendant/Cross–Appellant.**

**Nos. 88–1612, 88–1613.**

United States Court of Appeals,
Federal Circuit.

May 17, 1989.

Rosanne J. Faraci, Mayer, Brown & Platt, Chicago, Ill., argued, for plaintiff-appellant. With her on the brief were Kenneth J. Jurek, Mark I. Levy and Warren von Schleicher, Chicago, Ill.

John L. Cline, Willian, Brinks, Olds, Hofer, Gilson & Lione, Ltd., Chicago, Ill., argued, for defendant/cross-appellant. With him on the brief were Steven Z. Szczepanski, Cynthia A. Homan and Grantland G. Drutchas, Chicago, Ill.

Before MARKEY, Chief Judge, NICHOLS, Senior Circuit Judge, and NEWMAN, Circuit Judge.

MARKEY, Chief Judge.

Everpure, Inc. (Everpure) appeals from a July 21, 1988 summary judgment of the United States District Court for the District of Connecticut, No. CIVIL N–88–170 PCD (Dorsey, J.), based on a finding that Cuno Inc. (Cuno) did not infringe claims 1, 4, 5, and 6 of Everpure's United States Patent No. 3,746,171 ('171). Cuno cross-appeals the denial of attorney fees and Rule 11 sanctions and requests attorney fees on appeal. We affirm in all respects and deny Cuno's request for attorney fees on appeal.

## BACKGROUND

The asserted claims of Everpure's '171 patent are drawn to the combination of a head and an attached filter cartridge. The neck of the cartridge is removably inserted into the head and has channels for directing fluid to and from a filter sealed within the cartridge. When Everpure's filter wears out, it sells entire cartridges for periodic replacement during the much longer life span of the head.

Cuno supplies, free of charge to its customers, an adapter that enables attachment of a Cuno cartridge to an Everpure head. The adapter performs the function of the neck of Everpure's cartridge.

### District Court Opinion

Everpure sued Cuno for contributory and induced infringement. Cuno moved for

summary judgment of non-infringement, alleging that replacement of Everpure's cartridges constituted permissible repair.[1] The district court granted Cuno's motion as a matter of law, finding no genuine issue of material fact as to contributory or induced infringement of the asserted claims. The district court reasoned:

> It is not without significance that the cartridge consists of the internal material which accomplishes the filtering process. Specifically, the casing contains the filtering element which receives, filters, and discharges the fluid from and to the filter head to which it interconnects. It is the filtering element, not the casing, which eventually wears out. Yet, the patent speaks of "a replaceable filter unit." The objects of the patent are a quickly and easily removable filter unit achieved by a clamping collar which connects the filter unit and head. When used in conjunction with the pressure vessel, the clamping collar allows for the assembly and disassembly of the filter unit and head while it is under pressure without the loss of fluid.

> \*      \*      \*      \*      \*      \*

> Here it is the combination that is protected. The cartridge is not. Defendant is neither contributing to nor inducing a direct infringement of plaintiff's product. A purchaser of plaintiff's filter unit is free to replace the worn out filter cartridge and the fact that it requires a particular cartridge configuration to mate it to the head does not alter the legal principle. The filter cartridge is simply a component in a patented combination and the owner has the right to preserve the useful life of the combination by replacement of worn, unpatented components. Defendant's sale of a unit with an adapter to permit that mating is no different than selling a single cartridge that conforms to the configuration of the head. This does not constitute infringement as a matter of law. *Special Equip. Co. v. Coe*, 324 U.S. 370, 376, 65 S.Ct. 741, 744, 89 L.Ed. 1006 (1925)

(unpatented part of a combination patent may be appropriated by anyone).

The district court denied Cuno's motion for attorney fees, finding this not an "exceptional case", 35 U.S.C. § 285 (1982) because Everpure's position was not "so unsound as to have been frivolous." The district court denied Cuno's request for sanctions under Rule 11, Fed.R.Civ.P., because Cuno failed to show that a reasonable inquiry was not made before suit was brought.

## ISSUES

1. Whether the district court erred in granting summary judgment of non-infringement.

2. Whether the district court erred in denying Cuno's motion for attorney fees and sanctions.

3. Whether Cuno is entitled to attorney fees on appeal.

## OPINION

### *Summary Judgment*

Summary judgment may be granted where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate here because there can be neither contributory nor induced infringement when, because of the permissible repair doctrine, there has been no direct infringement. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341, 81 S.Ct. 599, 602, 5 L.Ed.2d 592, 128 USPQ 354, 357 (1961); *Met–Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687, 231 USPQ 474, 477 (Fed.Cir.1986). The doctrine of permissible repair allows one lawfully using a patented combination to preserve and maintain the combination by making repairs or replacing unpatented component parts necessary for continued

---

1. Everpure moved for preliminary injunction. Cuno's motion for summary judgment included allegations of patent misuse, inequitable conduct, and invalidity. Everpure's motion and Cuno's allegations were not considered by the district court and thus are not before us.

use. *Porter v. Farmers Supply Serv., Inc.*, 790 F.2d 882, 885–86, 229 USPQ 814, 816 (Fed.Cir.1986).[2]

Everpure says summary judgment was inappropriate because the repair/reconstruction dispute raises a genuine issue of material fact, namely, whether the filter is itself replaceable. Everpure argues that the permissible repair doctrine would permit replacement of only a worn part, such as the filter. It also says Cuno's adapter constitutes impermissible reconstruction because: (1) the adapter replaces an unworn part (the neck) of Everpure's cartridge; and (2) the adapter changes the structure and operation of the patented combination by rearranging the direction of water flow through the cartridge.

■■■■ Everpure correctly states that it is replacement of worn or spent parts in a patented combination that constitutes repair and not reconstruction. *Porter*, 790 F.2d at 886, 229 USPQ at 816 (collecting authorities). Everpure, however, is "hoist on its own petard", for it seals its filter into its cartridge. Everpure and Everpure alone made the business decision to sell disposable cartridges and to render its filter irreplaceable without replacement of the entire cartridge. Everpure submitted no affidavit that would raise a material fact question on whether owners of Everpure's assembly could expose and replace the filter without cutting, bending, distorting, and then rebuilding, the cartridge. That such action by the owner of the combination is neither practical nor feasible is illustrated by the label on Everpure's disposable cartridge. That label emphasizes "Quick Change Cartridge", instructs owners to "Service with a new cartridge ... at least once a year", and contains illustrated instructions on changing the cartridge, not

the filter. Thus Everpure has designed and conducts a business scenario in which the entire cartridge, including its sealed-in neck and filter, is spent when the filter wears out.[3] It is at least difficult to accept the notion that one who purchases a disposable cartridge under instructions to replace it at least yearly is guilty of infringement when the buyer does precisely that.

Replacement of the spent cartridges in this case is clearly repair and not reconstruction. *See Payne v. Dickinson*, 109 F.2d 52, 54, 44 USPQ 181, 183 (3d Cir.), *cert. denied*, 310 U.S. 637, 60 S.Ct. 1080, 84 L.Ed. 1406 (1940) (not practicable for owner to replace worn needle securely inserted in hub; possible at factory but "well nigh impossible" with facilities at owner's command); *Electric Auto–Lite Co. v. P. & D. Mfg. Co.*, 109 F.2d 566, 567, 44 USPQ 377, 379 (2d Cir.1940) (Circuit Judges L. Hand, A. Hand, and Chase writing per curiam) (buyer entitled to replace entire breaker arm, not just the worn-out contact points attached to the arm; repair theory rests on patentee's intent that buyer have longer use than the life of the shortest-lived part).[4]

That the channels in the neck of Everpure's unpatented cartridge and those in the adapter are different is inconsequential. First, the neck is part of the spent cartridge. Second, "there is no legally recognizable or protected 'essential' element, 'gist' or 'heart' of an invention in a combination patent." *Aro*, 365 U.S. at 345, 81 S.Ct. at 604, 128 USPQ at 359. As the district court indicated, it is of no moment that Cuno chose to supply an adapter with its cartridge, rather than supplying a cartridge otherwise compatible with Everpure's head. The change in water flow does not constitute reconstruction because the direction of flow is irrelevant to the

---

**2.** Non-asserted claims 7–12 are drawn to the details of Everpure's unitary cartridge and to its closure. Everpure has not challenged the district court's reference to replacement of "unpatented" parts.

**3.** The '171 patent specification says the entire cartridge is preferably disposable but could be made in three separate parts (casing, closure, and filter), in which case only the filter would

be replaced. The latter circumstance is not present here.

**4.** Everpure puts much store by *Automotive Equipment Co. v. Connecticut Telephone & Electric Co.*, 19 F.2d 990 (3d Cir.), *cert. denied*, 275 U.S. 564, 48 S.Ct. 121, 72 L.Ed. 428 (1927). We agree with the courts in *Payne*, which ignored, and *Electric Auto–Lite*, which declined to follow, *Connecticut Telephone*.

nature and function of the patented combination.

In sum, a buyer commits no direct infringement of claims 1, 4, 5, or 6 when replacing Everpure's spent cartridge with an adapter-cum-cartridge, and, as above indicated, without direct infringement there can be no contributory or induced infringement.

### Attorney Fees and Sanctions

■ In view of the novelty of the present fact pattern, *i.e.*, use of an adapter to facilitate repair by replacement of a spent, disposable part of a patented combination, we cannot say the district court abused its discretion in denying Cuno's motion for attorney fees and Cuno's request for Rule 11 sanctions. *See Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573, 1582, 222 USPQ 833, 839 (Fed.Cir.1984); *Woodcrest Nursing Home v. Local 144, Hotel, Hospital, Nursing Home and Allied Services Union*, 788 F.2d 894, 899 (2d Cir. 1986).

■ Though Everpure's effort to force a trial to determine whether its filter is itself replaceable is regrettable in the face of all the undisputed facts, its argument on the adapter moves this appeal just over the line marked "frivolous". Hence, we can neither declare this appeal frivolous nor award attorney fees. Fed.R.App.P. 38.

*AFFIRMED.*

PAULINE NEWMAN, Circuit Judge, dissenting.

It is not disputed that the installation and use of Cuno's "adapter" and filter cartridge would be an infringement of the Everpure patent, unless both of these elements are within the exception of the principle of permissible repair. The filter cartridge may qualify, as Everpure concedes, in that it replaces the spent filter. But the "adapter" does not. Thus I respectfully dissent from the court's decision.

The patented invention is a filter assembly for purifying water. The so-called "adapter" comprises a major portion of the claimed assembly, as is apparent from the claims. Claim 4 is typical (letters (a)-(m) added):

4. A filter assembly comprising:

(a) a head adapted to be fixedly mounted;

(b) fluid inlet and outlet ports formed in said head;

(c) first cam surfaces on said head;

(d) a clamping collar having second cam surfaces engageable with said first cam surfaces and cooperating therewith so that rotation of said collar in one direction causes axial movement of said collar from a clamping to an unclamped position and rotation in an opposite direction returns said collar to a clamping position;

(e) a pressure vessel having a filter element disposed therein;

(f) means for supporting said pressure vessel in said clamping collar;

(g) means associated with said pressure vessel defining fluid inlet and outlet openings to and from the filter element and arranged for communication with said fluid inlet and outlet ports in said head to permit fluid flow through the filter;

(h) said means associated with said pressure vessel comprising a closure member in sealed engagement with the end of said pressure vessel,

(i) said means for supporting said pressure vessel in said clamping collar includes

(j) a plurality of circumferentially spaced ledge surfaces formed on said clamping collar and

(k) a plurality of circumferentially spaced ridge surfaces on said pressure vessel engageable with said ledge surfaces,

(*l*) safety means for preventing fluid under pressure in the system in which the filter assembly is disposed from blowing said pressure vessel from said head in the event removal of the pressure vessel is attempted before shutting off the supply of fluid to the head,

(m) said safety means comprising cooperating stationary stop means on said head and stop means on said clamping

collar defining a predetermined limit of rotation of said clamping collar when removal of said pressure vessel from the filter assembly is desired and further comprising said circumferentially spaced ledge surfaces on said clamping collar which in cooperation with said ridge surfaces on said pressure vessel are effective during initial disengagement of said pressure vessel from said head to prevent the pressure vessel being blown from said head.

The principal advantage of the claimed filter assembly is that the filter element can be replaced without turning off the water supply and without blowing the pressure vessel from the head. This is achieved by construction of the overall assembly in two parts: a fixed part and a separable part, whose elements interact to achieve, together, the purposes of the invention.

The fixed part, called the head, is permanently attached to the water line. Claim clauses (a)-(d) and portions of clauses (i)-(j) and (l)-(m) define elements of the head.

The separable part comprises the remaining claim elements: claim clauses (e)-(h) and cooperating components of clauses (i)-(k) and (l)-(m). Included are not only the pressure vessel containing the filter element, clause (e), but also all the elements that are housed in the "adapter": the conduits that coordinate with the fluid paths in the head, the support and closure members, the safety means, and the leak-proof attachment. The specification refers to this entire separable part as the "replaceable filter unit", thereby distinguishing it from the fixed head. It is this entire unit the replacement of which the district court authorized as, simply, "repair".

In the commercial Everpure filter assembly all the elements of the "replaceable filter unit" are housed together in a cartridge. Cuno provides all these elements, but in two units. One unit contains the filter in a pressurized container, claim clause (e). The other unit, the Cuno "adapter", contains the elements of claim clauses (f)-(h) and the cooperating components of clauses (i)-(k) and (l)-(m). No part

replaced by the Cuno "adapter" is worn out, exhausted, broken, or in need of repair.

As Cuno states the argument, because all these elements are sealed in the cartridge with the filter, as sold by Everpure, all are deemed spent when the filter is spent. Thus the district court held that Cuno's entitlement to replace the spent filter necessarily means entitlement to replace everything in the Everpure cartridge.

### Discussion

The doctrine of permissible "repair" authorizes the replacement of worn or broken parts, but only when such replacement does not amount to "reconstruction" of the patented invention. The principle was stated in *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 345, 81 S.Ct. 599, 604, 5 L.Ed.2d 592, 128 USPQ 354, 359 (1961), that the law authorizing "repair" of a patented device relates to the "preserv[ation of] fitness to use so far as it may be affected by wear or breakage", quoting *Leeds & Catlin Co. v. Victor Talking Machine Co.*, 213 U.S. 325, 326, 29 S.Ct. 503, 503, 53 L.Ed. 816 (1909). The Court distinguished "reconstruction" as "a second creation of the patented entity". *Aro*, 365 U.S. at 345–46, 81 S.Ct. at 604, 128 USPQ at 358.

There is no automatic right to replace unworn, unbroken parts of a patented structure simply because the unworn part is sold or used in attachment to a worn part. While there is no bright line between permissible repair and impermissible reconstruction, in this case the "adapter" is plainly in the category of reconstruction. The only question is whether such reconstruction must be tolerated because it accompanies replacement of the spent filter.

The district court appears simply to have redefined reconstruction as repair, then holding that repair is permissible. The court said that "the fact that it requires a particular cartridge configuration to mate it to the head does not alter the legal principle" of permissible repair. This conclusion ignores the controlling fact that the "adapter" is not merely a "configuration to

mate it to the head". It is not a simple plug. It is a material and complex part of the total claimed invention.

Guidance arises from decisions of this court reviewing whether particular facts support "repair" or "reconstruction". *See, e.g., Lummus Industries Inc. v. D.M. & E. Corp.,* 862 F.2d 267, 272, 8 USPQ2d 1983, 1987 (Fed.Cir.1988) (replacement of unpatented reel that is not worn is not repair but "a second creation of the patented entity", quoting *Aro, supra* ); *Dana Corporation v. American Precision Co.,* 827 F.2d 755, 3 USPQ2d 1852 (Fed.Cir.1987) (it is permissible repair to replace defective or worn parts of clutches with used or new parts, where no more than four parts of the many-part clutches were new); *Porter v. Farmers Supply Service, Inc.,* 790 F.2d 882, 229 USPQ 814 (Fed.Cir.1986) (replacement of worn-out unpatented disks of harvesters was permissible repair, the court referring to the relative costs of the disks ($79.50) and the harvester ($42,400)).

The district court may have been led into error by misapplication of its conclusion that because an "unpatented part of a combination patent may be appropriated by anyone, *Special Equipment Co. v. Coe,* 324 U.S. 370, 376, 65 S.Ct. 741, 744, 89 L.Ed. 1006 (1945)", Cuno can freely provide any unpatented component of the combination. *Special Equipment* does not so hold. 35 U.S.C. § 271(c) specifically states the contrary.[1] The district court's reliance on *Special Equipment* suggests misunderstanding of the law of contributory infringement as well as the law of repair/reconstruction.

The panel majority relies on *Payne v. Dickinson,* 109 F.2d 52, 44 USPQ 181 (3rd Cir.1940), where the claimed combination was a hypodermic syringe and a needle sealed into a "hub" adapted to fit the syringe, and the court held that it was permissible repair to replace the worn or broken needle with its hub; and on *Electric*

*Auto–Lite Co. v. P. & D. Mfg. Co.,* 109 F.2d 566, 44 USPQ 377 (2d Cir.1940) wherein the court held that it was permissible repair to replace a breaker-arm instead of solely the worn contact points it contained, distinguishing an earlier, contrary case on the basis that it had now become cheaper to replace the breaker-arm than to replace the points. These cases support the proposition that Cuno is entitled to provide the filter in its pressurized canister, but they do not support Cuno's additional provision of the entire structure of fluid conduits, safety elements, and other claimed elements.

The multiple elements contained in the "adapter" are neither worn nor broken, and do not require repair. Cuno's argument that unless it provides these elements it can not provide the new filter is a recognition that it has reconstructed the total assembly. Such reconstruction is not authorized merely because Cuno finds it difficult, or impossible, to replace the filter in the pressurized canister.

The doctrine of permissible repair is a carefully evolved exception to the law of infringement. The integrity of the patent grant requires that permissible repair be limited to that which can be made without reconstruction. If the asserted repair also requires reconstruction, it can not be deemed to constitute an exception to the principles of infringement. The right to exclude others from practice of the patented invention is eviscerated if others are authorized to reconstruct a material portion thereof simply because the worn part of the patented structure is not readily repaired or replaced.

I would reverse the judgment of the district court.

---

1. 35 U.S.C. § 271(c):

Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.